# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STEPHANIE R. RADFORD, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> KILOLO KIJAKAZI, ) <br> Acting Commissioner of ) <br> Social Security, ) <br> ) <br> Defendant. ) | Case No. CIV-20-1001-SM |

## MEMORANDUM OPINION AND ORDER

Plaintiff Stephanie R. Radford brings this action for judicial review of the Commissioner of Social Security's final decision that she was not "disabled" under the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d)(1)(A). The parties have consented to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(c). Docs. 22, 23.[1]

Plaintiff asks this Court to reverse the Commissioner's decision and remand the case for further proceedings, arguing the Administrative Law Judge (ALJ) failed to properly assess Plaintiff's consistency under the correct legal standards and his findings are not supported by substantial evidence.

---

[1] Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination. Citations to the administrative record (AR) will refer to its original pagination.

Doc. 24, at 1, 11-15. After careful review of the record, the parties' briefs, and the relevant authority, the Court affirms the Commissioner's decision. *See* 42 U.S.C. § 405(g).

## I. Administrative Determination.

### A. Disability Standard.

The Social Security Act defines a disabled individual as a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just [the claimant's] underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

### B. Burden of proof.

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that [s]he can no longer engage in h[er] prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the

Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Id.*

### C. Relevant findings.

#### 1. The ALJ's findings.

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis to decide whether Plaintiff was disabled during the relevant timeframe. AR 16-25; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process). The ALJ found Plaintiff:

(1) had not engaged in substantial gainful activity since her alleged onset date of January 1, 2011;

(2) had the following severe impairments: multiple sclerosis, lumbago, chronic headaches, generalized anxiety disorder, and depression;

(3) had no impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(4) had the residual functioning capacity[2] (RFC) to perform light work but with the non-exertional limitations that she can understand, remember, and carry out simple tasks and instructions, can have no more than occasional public contact, and must work in a non-production paced work environment;

(5) was not able to perform her past relevant work;

---

[2]   Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

    (6) was able to perform light, unskilled jobs that exist in the national economy, such as housekeeping cleaner, merchandise marker, and mail sorter; and so,

    (7) had not been under a disability from January 1, 2011, through March 24, 2020.

*See* AR 17-25.

### 2. Appeals Council's findings.

The Social Security Administration's Appeals Council denied Plaintiff's request for review, *see id.* at 1-6, making the ALJ's decision "the Commissioner's final decision for [judicial] review." *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II. Judicial review of the Commissioner's final decision.

### A. Review standard.

The Court reviews the Commissioner's final decision to determine "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084; *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (internal quotation marks and citation omitted). A decision is not based on

substantial evidence "if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (citation omitted). The Court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (citation omitted).

### B.   Issues for judicial review.

Plaintiff asserts the "ALJ violated SSR 16-3p by failing to adequately assess [Plaintiff's] allegations of headache limitations." Doc. 24, at 10. She argues the evidence supported her allegations and the ALJ erred in his consistency analysis because he only gave "boilerplate explanations for discounting" them. *Id.*

The ALJ recounted Plaintiff's hearing testimony about her physical impairments, including her migraine headaches:

> The claimant testified she experiences about 10 to 15 migraine headaches per month, each lasting about 12 to 48 hours in duration. She testified she usually has to stay in bed when having a migraine.

AR 20.

Speaking about all of Plaintiff's alleged impairments, the ALJ stated:

> Although the claimant has had ongoing treatment since the alleged onset date, medical evidence of record consistently shows few objective findings that would support her allegations of functional limitations.

*Id.*

5

The ALJ then made the following findings relating to Plaintiff's consistency:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

*Id.*

> As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent with treatment records that suggest adequate relief from medication management.

*Id.* at 21.

The ALJ then summarized Plaintiff's medical history, including her report of "headaches" in September 2014, and "ongoing headaches" "partly due to stress and partly due to heat" in July 2019, when her treating physician diagnosed her with "tension headache, unspecified." *Id.* at 21-22.

> **C. The ALJ applied the correct legal standards in assessing Plaintiff's consistency and substantial evidence supported his findings.**
>
> > **1. The evidence related to Plaintiff's reported headaches.**

As noted, the ALJ reviewed Plaintiff's entire medical history of record and her testimony in reaching his conclusions. AR 18-23. Plaintiff testified that she sometimes wakes up with a "migraine" and that she had recently been having a lot of migraines that were "debilitating." *Id.* at 50. When her counsel asked her how many migraines she had been having a month, Plaintiff stated she had "10 to 15 migraines a month" which usually lasted "anywhere from 12 to 48 hours." *Id.* at 52.

Plaintiff's husband completed a December 2018 function report. He reported, among other things, that Plaintiff takes medication for her pain and her memory is slow. *Id.* at 254-61. Plaintiff completed a medication list in October 2019 where she reported that she takes over the counter medications ("Tylenol" and "Ib") for her "pain/[&] or migraine." *Id.* at 317.

Plaintiff's doctors neither diagnosed her with migraines nor prescribed her medication for migraine headaches. On November 22, 2011, during an appointment for refills of her pain medications, Plaintiff reported to her treating physician, Brenda Stutzman, D.O., that she had a headache that

7

caused pain "across the top of her head and down the side of her neck." *Id.* at 340. Dr. Stutzman diagnosed Plaintiff with a "headache" and opined it was a "tension" headache caused by "several issues in [Plaintiff's] life that are very stressful . . . ." *Id.* Dr. Stutzman did not prescribe headache medication for Plaintiff.

Plaintiff visited neurologist Dr. Nabila H. El Zind on April 29, 2014. *Id.* at 619. She complained of "headaches and ophthalmoplegia." *Id.* at 619. Dr. El Zind diagnosed Plaintiff with multiple sclerosis, hypertension, cerebrovascular accident, and anxiety. *Id.* at 621. Dr. Jorge Ramirez performed an MRI of Plaintiff's brain on May 14, 2014. *Id.* at 618. It showed "[m]ultiple areas of abnormal T2 weighted signal within the subcortical white matter compatible [with] patient's history of multiple sclerosis." *Id.* at 618. Dr. El Zind performed an EEG of Plaintiff's brain activity on that same date, which was "normal." *Id.* at 617. Plaintiff saw Dr. El Zind a few times for treatment of her multiple sclerosis until March 26, 2015. *Id.* at 609.

Plaintiff did not see Dr. Stutzman again until January 2015, when she reestablished care for her multiple sclerosis and monthly refills of her narcotic pain medications. *Id.* at 344, 346-47. During her monthly refill appointment on September 1, 2015, Plaintiff reported that she had stopped taking "Norco" for her chronic back pain "due to headaches." *Id.* at 377. Dr. Stutzman, noting that

8

Plaintiff "seem[ed] to be doing much better" that day with her pain and emotions, changed Plaintiff's back medication to a slow-release morphine. *Id.* at 378-79.

On March 10, 2016, Plaintiff reported during her appointment that she had woken up with a "bad headache" that morning. *Id.* at 405. She told Dr. Stutzman she had been at the hospital that week with her daughter, who had given birth to a baby, and that she "over did it." *Id.* After a physical examination, Dr. Stutzman diagnosed Plaintiff with a "tension-type headache, unspecified, not intractable." *Id.* at 406, 408. Dr. Stutzman did not prescribe Plaintiff any headache medication.

On May 14, 2018, during her monthly refill appointment, Plaintiff reported she had a "migraine" and had vomited five times that day. *Id.* at 517. She told Dr. Stutzman that her husband had another stroke and was in the hospital. *Id.* Dr. Stutzman stated in her report that Plaintiff "thinks she has a migraine, but I think it is due to stress." *Id.* Dr. Stutzman performed a physical examination and noted "no apparent distress." *Id.* at 518. She stated Plaintiff was "stressed" that day with a tension "headache." *Id.* at 517, 519. She did not prescribe Plaintiff any headache medication.

On October 2, 2018, Plaintiff complained of "pain in her head" and "her left side under her breast." *Id.* at 537. Plaintiff reported to Dr. Stutzman that

9

her husband was not working and she was stressed about their finances. *Id.* Dr. Stutzman did not provide a diagnosis and did not prescribe Plaintiff medication for a headache.

Although Plaintiff had not complained of a headache during her November 1, 2018 visit, Dr. Stutzman noted that day that "a lot of [Plaintiff's] headaches and chest pains [were] stress related." *Id.* at 543. During that appointment Plaintiff had reported she was stressed about finances because her husband was not working, and her daughter had been suspended from school for three months. *Id.* at 541. Dr. Stutzman suggested Plaintiff try yoga exercises to help with her tension and her balance. *Id.* at 543.

On November 30, 2018, Plaintiff reported during her refill appointment that she had a "migraine" for two days the past week. *Id.* at 545. She told Dr. Stutzman that she had been having headaches three to four times a month. *Id.* at 547. Dr. Stutzman noted she thought Plaintiff was having tension headaches, not migraine headaches. *Id.* Dr. Stutzman diagnosed Plaintiff with "tension-type headache, unspecified, not intractable." *Id.* at 548.

On December 6, 2018, Dr. Stutzman completed a physical medical source statement. *Id.* at 626-27. She stated she had diagnosed Plaintiff with tension headaches. *Id.* at 626. She noted that Plaintiff frequently "has headaches and neck pain." *Id.* She opined Plaintiff was capable of low stress work, would be

off task twenty percent of the time, would need a break every two hours, and would be absent an average of four days per month. *Id.* at 627.³

On June 21, 2019, Plaintiff reported that she "continues to have headaches on a regular basis. Partly due to stress and partly due to the heat." *Id.* at 575. Dr. Stutzman diagnosed her with "tension-type headache, unspecified, not intractable." *Id.* at 577. She did not prescribe Plaintiff any headache medication.

On August 15, 2019, Dr. Stutzman noted that Plaintiff was "obviously depressed" and was under "[t]oo much stress" from family issues. *Id.* at 568. Dr. Stutzman diagnosed Plaintiff with "[t]ension-type headache, unspecified, not intractable," and told Plaintiff to "do her exercises," "drink more water," and "stay out of the heat." *Id.* at 570.

---

³ The ALJ found this opinion "unpersuasive" because Dr. Stutzman's treatment records "d[id] not contain examination findings that correlate[d] to this degree of limitation," and the opinion was "inconsistent with other evidence documenting a lesser degree of physical dysfunction." AR 23.

### 2. The ALJ's consistency analysis[4] was legally sufficient.

The ALJ determined that Plaintiff's report of chronic headaches could reasonably be expected to produce her symptoms. AR 19-20; *see* SSR 16-3p, 2017 WL 5180304, at *3 ("First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain.").

The ALJ's next step was to determine whether Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were consistent with the objective medical evidence, statements from medical sources, and any other sources that might have information about her symptoms. SSR 16-3p, 2017 WL 5180304, at *6; *see* AR 19-20. Additional factors for the ALJ to consider were: (1) Plaintiff's daily activities; (2) the location, duration, frequency, and intensity of her pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage,

---

[4] This evaluation, known before as the "credibility" analysis, is now known as the "consistency" analysis. *See* Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *1-2 (Oct. 25, 2017) (superseding SSR 96-7p). There is little substantive difference between a "consistency" and "credibility" analysis. *See Brownrigg v. Berryhill*, 688 F. App'x 542, 545-46 (10th Cir. 2017) (holding that SSR 16-3p was consistent with the Circuit's prior credibility analysis). Thus, the Tenth Circuit's decisions analyzing credibility remain persuasive authority.

effectiveness, and side effects of medication; (5) treatment, other than medication, Plaintiff has received; (6) any measures other than treatment an individual uses or has used to relief pain or other symptoms; and (7) any other factors concerning functional limitations and restrictions. *Id.* at *7-8; *see also* 20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3). Statements the ALJ finds inconsistent with all the evidence will lead to a determination that "the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities." SSR 16-3p, 2017 WL 5180304, at *8.

The ALJ stated he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . ." AR 19. Plaintiff argues this "boilerplate" language was conclusory and insufficient to meet the requirements of SSR 16-3p. Doc. 24, at 10-11.

It is error for the ALJ to use standard boilerplate language that fails to set forth the "specific evidence" the ALJ considered in determining that a claimant's complaints were not consistent. *Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004). But, when an ALJ's consistency determination does not rest on mere boilerplate language but is linked to specific findings of fact fairly derived from the record, the Court will affirm it. *White v. Barnhart*, 287 F.3d 903, 909-10 (10th Cir. 2001).

13

Here, the ALJ linked his consistency analysis to specific findings of fact. Faced with Plaintiff's unsubstantiated claim of "10 to 15 migraine headaches per month," the ALJ noted Plaintiff "endorsed ongoing headaches, partly due to stress and partly due to heat" and noted she had been "assessed with tension headaches." AR 20, 22. He reviewed Plaintiff's medical history since 2011. *Id.* at 20-23. He reviewed Plaintiff's daily activities. *Id.* at 20. And he considered the consistency of "the medical evidence and other evidence in the record." *Id.* at 20-24.

Consistency findings are "'peculiarly the province of the finder of fact,'" and courts should "'not upset such determinations when supported by substantial evidence.'" *See Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). Provided the ALJ links his assessment of Plaintiff's consistency to specific evidence in the record, this Court affords substantial deference to the ALJ's determination. *See. e.g.*, *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012) ("But so long as the ALJ 'sets forth the specific evidence he relies on in evaluating the claimant's credibility,' he need not make a 'formalistic factor-by-factor recitation of the evidence.'" (quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000))). "[C]ommon sense, not technical perfection," is this Court's guide. *Id.*

14

Though the ALJ used boilerplate language in spots, he linked his analysis to specific findings of fact and, thus, his analysis is not contrary to the requirements of SSR 16-3p.

### 3. Substantial evidence supports the ALJ's consistency analysis.

Plaintiff acknowledges that the ALJ included her reported headache symptoms in his consistency analysis. Doc. 24, at 11. She asserts, however, that the ALJ erred in his assessment of whether her symptoms impacted her ability to work because he "misunderstood the impairment of headaches." *Id.* Plaintiff argues that the objective evidence supported her statements, that she consistently reported her symptoms and the record contains no evidence contradicting her reports, and that there is no evidence of adequate improvement of her headaches with treatment. *Id.* at 12-13.

Plaintiff points to her 2014 brain MRI as "objective evidence" that she suffered from migraine headaches. *Id.* at 11-12. She complains the ALJ erred by failing to acknowledge this evidence in his consistency analysis. But, as discussed above, the MRI results, while showing "[m]ultiple areas of abnormal T2 weighted signal within the subcortical white matter," were "compatible" with Plaintiff's "history of multiple sclerosis," not migraine or chronic headaches. AR 618.

15

Plaintiff also asserts her "consistent report of symptoms" "bolstered her allegations" and nothing in the record contradicted her reports of headaches. Doc. 24, at 12. But the record shows, and the ALJ recognized, that Dr. Stutzman diagnosed Plaintiff with "tension headache[s]," rather than migraines. AR 21-22, 340, 406, 408, 517, 547-48, 570, 577. *See, e.g., Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007) (holding that the ALJ's notation that none of the claimant's treating sources had "diagnosed her with migraine syndrome and she had not been prescribed medication for migraine" "were appropriate factors for assessing credibility"). Over the course of at least five years of treating Plaintiff, Dr. Stutzman's opinion was that these headaches were caused by family and financial stress and the summer heat and could be resolved without any prescribed medication. AR 340, 405, 517, 519, 537, 543, 547-48, 568, 570, 575. And Plaintiff's testimony at the hearing that she suffered from ten to fifteen debilitating migraines a month was inconsistent with her report to Dr. Stutzman that she suffered headaches three to four times a month. *Id.* at 52, 547.

Lastly, Plaintiff complains that because of the necessity that she lie down during a headache episode and Dr. Stutzman's opinion that her tension headaches were caused by stress and heat, the ALJ should have at least discussed these limitations in crafting the RFC. Doc. 24, at 14-15. But, as the

16

Court has explained, these limitations were not consistent with the whole record. *See, e.g.*, *Terwilliger v. Comm'r, Soc. Sec. Admin.*, 801 F. App'x 614, 628 (10th Cir. 2020) ("'There is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question.' . . . It is the ALJ's job to determine the claimant's RFC based on the evidence in the record." (quoting *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (alteration omitted))). And, assuming Plaintiff's headaches are exacerbated by stress, the ALJ's RFC for light work limited to simple tasks and instructions, only occasional public contact, and a non-production rate pace adequately accounted for this limitation. AR 19, 23. *See, e.g.*, *Qualls*, 206 F.3d at 1372 ("The ALJ found that plaintiff's hand problems limited his ability to perform light and sedentary work, and the jobs he found plaintiff could perform took those limitations into account."); *see also Hill v. Astrue*, 289 F. App'x 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before he can determine RFC within that category.'" (quoting *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) (alteration omitted)).

17

The Court can capably review the ALJ's decision on Plaintiff's consistency and finds his discussion of Plaintiff's headaches was adequate based on the record as a whole. Given that Plaintiff received limited treatment for her headaches and her physicians never prescribed her any medication to treat her headaches, substantial evidence supports the ALJ's discounting of Plaintiff's complaints of debilitating headaches. *See, e.g., Wall*, 561 F.3d at 1067 ("Given that Claimant was never diagnosed with migraine headaches by her treating physicians or prescribed any medication to treat such a condition, substantial evidence supports the ALJ's discounting of Claimant's complaints of migraines.").

## III. Conclusion.

Based on the above, the Court affirms the Commissioner's decision.

**ENTERED** this 29th day of October, 2021.

_____

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE